900 P.2d 351

**Romero GRACIA, Plaintiff–Appellee,**

v.

**John J. BITTNER, Defendant–Appellant.**

No. 15672.

Court of Appeals of New Mexico.

May 26, 1995.

**192**

Mark A. Filosa, Filosa & Filosa, T or C, for plaintiff-appellee.

William F. Riordan, Tina R. Sibbitt, Riordan & Associates, Albuquerque, for defendant-appellant.

### OPINION

PICKARD, Judge.

Every litigated case is tried at least three times: there is the trial the attorneys intended to conduct; there is the trial the attorneys actually conducted; and there is the trial that, after the verdict, the attorneys wished they had conducted. The questions we address in this case revolve around the extent to which, on appeal of a civil case, an appellate court may review the trial the attorneys wish they had conducted. This case was originally part of our expedited-bench-decision program. Due to the importance of the issues involved, however, we removed the case from the program pursuant to paragraph four of the order adopting it. *See In re Court of Appeals Caseload,* No. 1–19, Filed Mar. 3, 1993 [reprinted at Vol. 32, No. 25, SBB Section A at 4–5, and Bar Journal, Jan.–Feb. 1995 ed., page 59]. We hold that the issues properly brought to the trial court's attention do not result in reversible error. We also hold that the remaining issues do not fall within the limited circumstances in which an appellate court may review issues raised for the first time on appeal in civil cases. Accordingly, we affirm.

### Factual and Procedural Background

This case arose out of a landlord/tenant dispute. Defendant owns over fifty rental units in New Mexico, most of which are inexpensive units that he rents to people of Hispanic origin or heritage, many of whom receive public assistance. Plaintiff and Defendant entered into an oral agreement pursuant to which Plaintiff would be a handyman for one of Defendant's premises and, in exchange, Plaintiff would receive a daily fee plus living quarters. Shortly after this arrangement began, Defendant was unsatisfied with Plaintiff's work. The evidence was disputed regarding with how much certainty Defendant told Plaintiff of this dissatisfaction and regarding what the parties agreed to do about it. It will suffice to say that Defendant testified that he told Plaintiff to leave, and Plaintiff testified that he was still working in and around the premises and was trying to negotiate rent when the events giving rise to this case occurred. Those events were that, while Plaintiff was out of town and his young son with whom he lived was at school, Defendant used his pass key to enter Plaintiff's apartment; Defendant removed all of Plaintiff's and his son's belongings and put them in the parking lot; Defendant put a sign on the apartment saying that the property was moved by police order and that trespassers were not allowed in the apartment; Defendant watched as people browsed through Plaintiff's property; Defendant watched as Plaintiff's son came home from school to this scene; and Defendant made racial slurs about "Mexicans" when questioned about what he had done.

Based on these facts, Plaintiff sued Defendant for violation of the Owner–Resident Re-

lations Act, NMSA1978, §§ 47–8–1 to –51 (Repl.Pamp.1982 & Cum.Supp.1994) (unless otherwise indicated, subsequent references to this Act (the Act) will be to the 1982 pamphlet), for intentional infliction of emotional distress, and for punitive damages. Plaintiff recovered $2,000 for violation of the Act, which was the value of the Plaintiff's property lost due to Defendant's acts; $5,000 for intentional infliction of emotional distress; and $20,000 for punitive damages. On appeal, Defendant argues that the trial court erred (1) in failing to instruct the jury on the employee exception to the Act, (2) in failing to give Defendant's tendered instructions on Plaintiff's status as a trespasser, (3) in instructing the jury that rental agreements under the Act could be either written or oral, and (4) in admitting testimony of a local magistrate judge about the application of the Act.

Because the manner in which these issues were raised is critical to the disposition of this appeal, we explain the procedural facts in some detail. Preliminarily, we note that Plaintiff was represented by the same counsel below as on appeal, while Defendant has new counsel on appeal. Plaintiff's complaint generally stated the facts but did not detail his legal theory of the case. Defendant's answer was similarly general. At trial, Plaintiff's theory of damages for violation of the Act was that he was entitled to recover for his property lost as a result of Defendant putting him out on the street without the sort of notice required by the Act. Defendant took the position that the Act did not apply and notice was not required because Section 47–8–9 states that "the following arrangements are exempted by this act: ... E. occupancy by an employee of an owner whose right to occupancy is conditional upon employment in and about the premises...."

Although it was Defendant's theory that the employment exception applied to this case, the only instructions Defendant tendered on this theory were definitional instructions of what constitutes an employee. The instruction that Defendant contends on appeal should have been given was taken from the uniform jury instructions on respondeat superior, SCRA1986, 13–403 (Repl.

1991), and distinguishes employees from other relationships by the employer's retention of the right to control the details of the work. Similarly, most of Defendant's tendered instructions on his theory of trespass were definitional instructions on trespassers and licensees. The trial court expressed its belief that definitional instructions taken from the tort area were irrelevant and that its instructions adequately instructed the jury that it was to determine whether the Act applied. None of Defendant's requested instructions informed the jury that the Act did not apply to employees whose occupancy is conditional on employment.

Neither party alerted the trial court to a 1989 amendment to the Act. That amendment essentially applied the Act to written agreements only, whereas the Act formerly applied to both written and oral agreements. The 1989 amendment substituted "all written agreements" for previous definitional language stating that rental agreement means "all agreements written or oral." *Compare* § 47–8–3(O) (Cum.Supp.1994) *with* § 47–8–3(N). At the same time the Act was amended to apply to written agreements only, the Act was amended to obligate landlords to provide such a written agreement, § 47–8–20(G) (Cum.Supp.1994). Plaintiff explained, both in his brief and at oral argument, that he thought Defendant made a tactical decision not to alert the trial court that the Act did not apply to oral agreements because of Defendant's admission that he did not believe in written agreements and typically did not use them. Plaintiff argued that we should hold Defendant to what he assumed was Defendant's tactical decision.

When Plaintiff called the local magistrate to testify, Defendant objected to her testifying as to the law because it was the trial judge's obligation to instruct the jury on the law. Plaintiff explained that the magistrate would not be explaining the law or instructing on the law. Plaintiff wanted the magistrate to testify as to procedure under the Act—how long the procedures take, what is involved, etc. On direct examination, therefore, the magistrate testified that the Supreme Court had promulgated forms for a three-day notice, a seven-day notice, and a

thirty-day notice under the Act. The three-day notice was for non-payment of rent; the seven-day notice was for other violations of the rental agreement; and the thirty-day notice was to terminate the agreement. The magistrate explained that once notice was given, the parties could cure any problem and not go to court. If the problem was not cured, a petition would be filed, and the case would be tried on an expedited docket. Even if the landlord recovered possession of the premises, the magistrate would not order possession until a fifteen-day appeal time had run. The thrust of the magistrate's testimony was that the procedure was not without cost, either in dollars or in time. Near the conclusion of the magistrate's testimony, Plaintiff asked whether the magistrate had records of Defendant's use of these procedures. Defendant objected to questions about the magistrate's files, but withdrew his objection to the specific question about whether Defendant had used the Act's procedures, and the magistrate answered that she had.

Notwithstanding Defendant's objections to the magistrate's testimony on direct examination, Defendant's cross-examination appeared to involve the very matters to which he had earlier objected. On cross-examination, the magistrate testified that the Act applied only to rental agreements, that such agreements could be either written or oral, and that neither employees nor independent contractor arrangements are covered by the Act. When Defendant wished to ask her a hypothetical question about whether the Act would apply to the facts of this case, the parties had a lengthy bench conference about whether the hypothetical question was proper and whether the magistrate was now Defendant's witness.

During the bench conference, Defendant announced he would have no further questions of the magistrate. Plaintiff then asked her on redirect examination to clarify whether the Act exempted only employees or both employees and independent contractors. Defendant objected that the magistrate had already answered that question for him. Plaintiff was allowed to have the magistrate read the Act and conclude that the Act used the word "employee," and not independent contractor.

Defendant then approached the bench, seeking permission to question the magistrate further on the issue of employee versus independent contractor. The trial judge refused permission and said that he would decide that question. Defendant was allowed to question the magistrate on the definitions of resident, rental agreement, and rent under the Act, and the magistrate was then excused. Defendant repeated for the record his objection that the magistrate misled the jury about the exception applying only to employees and not independent contractors. The trial judge said that the matter would be cured by the jury instructions. Defendant never tendered jury instructions that would have cured the matter, and indeed the tendered instruction he contends should have been given excluded independent contractors from his definition of employee.

*Discussion*

It is with these facts in mind that we must determine whether reversible error occurred in this case. We will first analyze the issues surrounding the employee exception instructions submitted by Defendant. Thereafter, we will address the apparent error in the trial court's instruction to the jury which stated that the Act applied to both written and oral rental agreements. Finally, we will address the objections to the magistrate's testimony.

*Employee Exception Instructions*

SCRA1986, 12–216(A) (Repl.1992) generally requires error to be preserved below before it will be reviewed on appeal. SCRA1986, 1–051(I) (Repl.1992) similarly requires error in jury instructions to be preserved by objection to instructions given or by tendering correct instructions in the case of failure to instruct. However, the trial court has a duty to instruct the jury regarding the law applicable to the facts unless such instructions are waived. SCRA 1–051(B). Additionally, a general exception to the preservation requirement allows an appellate court to consider jurisdictional questions or questions involving general public interest or

fundamental error or fundamental rights of a party. SCRA 12–216(B).

■ Defendant did not specifically object to the manner in which the trial court instructed the jury concerning the employee exception to the Act. In addition, Defendant did not tender correct or adequate instructions appropriate to inform the jury, or the trial court in a precise way, of his theory that the Act did not apply because Plaintiff was an employee whose residency depended on his employment status. Defendant relies on the concept of fundamental error to escape the consequences of his failure to object and his failure to tender correct, complete, and appropriate instructions.

Defendant relies on language in *Gerrard v. Harvey & Newman Drilling Co.*, 59 N.M. 262, 273, 282 P.2d 1105, 1112 (1955), to the effect that a trial court has the duty to instruct the jury on the fundamental law applicable to the facts of the case, whether such instructions are requested or not. There are several answers to Defendant's contention.

First, *Gerrard* is not an opinion of the Supreme Court. *See Primus v. Clark*, 58 N.M. 588, 594–95, 273 P.2d 963, 967 (1954); *Casias v. Zia Co.*, 94 N.M. 723, 725, 616 P.2d 436, 438 (Ct.App.1980). The language on which Defendant relies was in the lead opinion by Justice Kiker. However, Chief Justice Compton and Justice Lujan concurred in the result only based on error that was properly preserved. *Gerrard*, 59 N.M. at 274, 282 P.2d at 1113. Two justices dissented without opinion. *Id.*

Second, the "fundamental law applicable to the facts in the case" has been interpreted to mean the theory of recovery, and not matters of defense or incidental matters. *Id.* at 273, 282 P.2d at 1112; *cf. State v. Tarango*, 105 N.M. 592, 599, 734 P.2d 1275, 1282 (Ct.App.) (doctrine of error that can be raised for the first time on appeal, pursuant to which trial court in a criminal case must instruct jury on essential elements whether requested to or not, does not apply to definitional matters), *cert denied*, 105 N.M. 521, 734 P.2d 761 (1987), *overruled on other grounds by Zurla v. State*, 109 N.M. 640, 645, 789 P.2d 588, 593 (1990); *State v. Roybal*, 100 N.M. 155, 157,

667 P.2d 462, 464 (Ct.App.1983) (same doctrine does not apply to matters of statutory exception). In this case, Defendant's tendered instructions were definitional or matters of statutory exception.

Third, no case to our knowledge has followed the language of *Gerrard* in reversing a civil case based on erroneous instructions not properly called to the trial court's attention. This Court has specifically held that New Mexico has not adopted a rule that fundamental error may be found as a result of the instructions given in a civil negligence case. *Martinez v. Teague*, 96 N.M. 446, 451, 631 P.2d 1314, 1319 (Ct.App.1981). Although the language in *Gerrard* has been repeated in cases such as *City of Albuquerque v. Ackerman*, 82 N.M. 360, 364, 482 P.2d 63, 67 (1971), *Ackerman* followed the general rule that allegations of error that were not preserved in a timely fashion to allow the trial court to correct the error would not be the subject of reversal on appeal. *Id.* This holding is consistent with legions of cases. *See, e.g., Budagher v. Amrep Corp.*, 97 N.M. 116, 119, 637 P.2d 547, 550 (1981); *Hamel v. Winkworth*, 102 N.M. 133, 134–35, 692 P.2d 58, 59–60 (Ct.App.1984).

To the extent that Defendant relies on *Saiz v. Belen School District*, 113 N.M. 387, 400–01, 827 P.2d 102, 115–16 (1992), for the proposition that a trial court is obligated to sua sponte recognize and instruct on any exceptions once it instructs on any rule, we read *Saiz* consistently with *Mireles v. Broderick*, 117 N.M. 445, 450–51, 872 P.2d 863, 868–69 (1994), to simply stand for the proposition that the preservation requirement should be applied with its purposes in mind, and not in an unduly technical manner to avoid reaching issues that would otherwise result in reversal. Recently, the Supreme Court outlined the two important purposes of the preservation requirement: (1) that the trial court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection. *Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) ]. Application of these rules in this case does not help Defendant.

Fourth, this case does not involve matters of general public interest. This case involves a private dispute between private parties and a garden-variety failure to adequately call the trial court's attention to the precise manner in which the jury should have been instructed. The issues presented by the jury instructions in this case in the context in which they are raised are not likely to affect a large number of cases or litigants. *Compare Pineda v. Grande Drilling Corp.*, 111 N.M. 536, 539–41, 807 P.2d 234, 237–39 (Ct. App.1991).

Finally, and perhaps most basically, the asserted inadequacy of the instructions does not implicate the jurisdiction of the trial court to hear the matter. The inadequacies of the trial court's instructions, whatever they are, do not implicate the trial court's authority to try the case for violations of the Act or under the common law theory of intentional infliction of emotional distress. *See Sundance Mechanical & Util. Corp. v. Atlas*, 109 N.M. 683, 685–90, 789 P.2d 1250, 1252–57 (1990).

This is not a case in which the trial court ruled that Defendant's defense of statutory exception was inapplicable. The trial court recognized that the jury would have to determine whether the Act applied to this situation, and the trial court gave an express instruction that Defendant justified his actions on the bases that Plaintiff was his employee, he had fired Plaintiff a week earlier, and he had told Plaintiff to vacate the premises. Had the trial court done everything that Defendant had requested, i.e., given definitional instructions on employee, licensee, and trespasser, the jury would not have been any more enlightened regarding Defendant's defense than it was based on the instructions given. Thus, the trial court's refusal of incomplete and possibly incorrect instructions cannot be deemed reversible error under the circumstances of this case.

■ Defendant did tender one instruction on the issue that a person becomes a trespasser when a license to use premises is revoked. However, instructions are to be considered as a whole and are sufficient when they fairly instruct the jury as to the applicable law. *Vigil v. Miners Colfax Medi-cal Ctr.*, 117 N.M. 665, 670, 875 P.2d 1096, 1101 (Ct.App.), *cert. denied,* 117 N.M. 744, 877 P.2d 44 (1994). The concept covered by Defendant's trespasser instruction was already covered by the trial court's instructions on the applicability of the Act and Defendant's justification for his actions.

*Applicability of the Act to Oral Agreements*

■ Defendant's issue concerning the application of the statute to written agreements only is in a different category from the tendered instructions. The error in this jury instruction was not in any way brought to the attention of the trial court. Indeed, for all the transcript reveals, both parties and the trial court appeared to be of the belief that the Act had not been amended. Thus, this issue was not even arguably preserved. The only theory available, which would allow this Court to review the issue substantively, is a general application of the law of fundamental error. Our observations above concerning the precedential value of *Gerrard* apply here. In addition, we are doubtful that the doctrine of fundamental error applies in civil cases, where the asserted error inheres solely in difficulties with jury instructions. *Martinez,* 96 N.M. at 450–51, 631 P.2d at 1318–19. The circumstances of this case do not lead us to re-examine that holding.

As noted above, it is unclear from the record why the parties failed to alert the trial court to the amendments limiting application of the Act to written rental agreements. The possibilities range from simple lack of knowledge on the part of all parties to Defendant's conscious choice not to bring the matter up because of his attitude toward the requirement and his potential violation of the Act when he failed to give Plaintiff a written rental agreement. Whatever the reason, we do not deem the circumstances of this case to rise to the level of fundamental error. In the criminal context, we have held that fundamental error will be invoked only when the question of guilt is so doubtful as to shock the conscience of the court or where the court considers it necessary to avoid a miscarriage of justice. *State v. Ortega,* 112 N.M. 554, 566, 817 P.2d 1196, 1208 (1991);

*State v. Lucero,* 118 N.M. 696, 700, 884 P.2d 1175, 1179 (Ct.App.), *cert. denied,* 118 N.M. 731, 885 P.2d 1325 (1994). While we are not prepared, or required, to adopt a similar rule in all civil cases, these cases do provide a useful guidepost for our consideration.

In fact, the common element in civil cases that have been reversed for unpreserved error has been the total absence of anything in the record of the case showing a right to relief in the person granted relief. For example, in *De Baca v. Perea,* 25 N.M. 442, 446, 184 P. 482, 484 (1919), a judgment was rendered on the pleadings in a case in which the pleadings clearly failed to state facts showing entitlement to relief. Similarly, in *Sais v. City Electric Co.,* 26 N.M. 66, 68–69, 188 P. 1110, 1111 (1920), a judgment was rendered upon one party's failure to reply to a pleading to which no reply was legally required. In both cases, the Supreme Court found the judgment fatally and inherently defective. *Id.* at 69, 188 P. at 1111–12.

In *Schaefer v. Whitson,* 32 N.M. 481, 482, 259 P. 618, 618 (1927), a judgment was reversed because there was a total lack of evidence showing any right to relief. Similarly, in *Thwaits v. Kennecott Copper Corp.,* 52 N.M. 107, 114, 192 P.2d 553, 557 (1948), a judgment was reversed when the evidence indisputably showed a right to relief. To a like effect is *DesGeorges v. Grainger,* 76 N.M. 52, 56–58, 412 P.2d 6, 9–10 (1966), where the Court remanded for proper findings because it appeared from the evidence that relief was required. When a statute does not grant a right to relief in a particular situation, it is fundamental error to grant relief based on the statute. *Jaffa v. Lopez,* 38 N.M. 290, 296–97, 31 P.2d 988, 992 (1934).

The distinction between all these cases and the case at bar is that Plaintiff here had a right to relief, perhaps even under the Act. Defendant, who was under an obligation to provide a written rental agreement, which would have provided Plaintiff with the rights he sought to enforce against Defendant in this case, failed in his obligation and thereby violated the Act. The Act provides damage remedies for its violation. Section 47–8–27(B). Had Defendant objected and alerted both the trial court and Plaintiff to the theo-ry he now raises on appeal about the lack of a written agreement, Plaintiff could have altered his theory of the case accordingly and could have recovered under an alternate theory. As it was, Plaintiff contends he was of the belief that Defendant intentionally waived reliance on the lack of a written agreement as a tactic to keep the jury from knowing exactly how much Defendant violated the Act.

We certainly are not sufficiently struck by the potential for an incorrect or unjust outcome as a result of the instruction given that it would shock the conscience of this Court to allow the judgment to stand. *See Lucero,* 118 N.M. at 700, 884 P.2d at 1179. Where there exist theories of recovery that are both within the pleadings and within the evidence, we should not reverse on an issue raised for the first time on appeal after the opportunity has passed to timely correct any error presented by the issue. To hold otherwise would countenance sandbagging by trial attorneys. *See Maldonado v. Haney,* 94 N.M. 335, 337, 610 P.2d 222, 224 (Ct.App. 1980) (appellate court will not allow litigant to sandbag the trial court). It would also countenance waste of resources by both our trial and appellate courts. When a trial court tries a particular case and rules correctly on the issues presented to it, and when the evidence presented to it shows a right to relief for one party or the other, we should not intervene on appeal on grounds never presented and on grounds that will not necessarily change the result. *Compare Shultz v. Ramey,* 64 N.M. 366, 369, 328 P.2d 937, 938 (1958) (appellate courts will not reverse when result will not be changed) *with Jewell v. Seidenberg,* 82 N.M. 120, 124, 477 P.2d 296, 300 (1970) (when error is properly called to trial court's attention, case will be reversed when there is slight prejudice).

Finally, this issue does not present a question of public interest. The circumstances which led the parties, for their own unknown reasons, to fail to alert the trial court to the jury instruction error appear to be relatively isolated and unique to this case and Defendant's testimony. It is unlikely to be repeated in other situations. And, certainly, the error has nothing to do with the trial

court's jurisdiction to hear and decide the issues before it.

### Magistrate's Testimony

 Defendant's last issue is that the trial court erred in allowing the local magistrate to give prejudicial testimony on the applicability of the Act. The magistrate properly testified about practical procedures under the Act, including how long they took and how much they cost. *See* SCRA1986, 11–402 (Repl.1994) (relevant testimony is admissible). These matters were relevant to Plaintiff's theory that Defendant did not want to take the time to properly terminate Plaintiff's residency. *See* SCRA1986, 11–401 (Repl.Pamp.1994) (definition of relevant evidence). The magistrate also testified properly, without objection, to her knowledge of Defendant's previous use of the Act. This matter was also relevant to Plaintiff's theory.

 Defendant's appellate objection does not seem to go to these matters. Rather, Defendant's primary argument is that the trial court erred in allowing the magistrate to read from the Act that the exception for employees used the word "employees" and not "independent contractors." As to this matter, we hold that any error was invited by Defendant's questions on cross-examination that were precisely within the boundaries of his own objection to the magistrate giving her opinion on issues of law. *See Hodgkins v. Christopher*, 58 N.M. 637, 640–41, 274 P.2d 153, 154–55 (1954) (holding that it is too well established for dispute that a party cannot invite error and then take advantage of it). Except for the one question asked on redirect to clarify the magistrate's misstatement of the actual wording of the statute, Plaintiff did not ask any questions seeking opinions of law from the magistrate.

Additionally, after colloquy, the trial court said it would instruct the jury on the proper interpretation of the Act's exception for employees. Defendant tendered no instruction on the issue and, in fact, his requested instruction would have informed the jury of the distinction between employees and independent contractors. Therefore, for the reasons given above, we cannot say that the trial judge erred in failing to give an instruction on the proper interpretation of the Act's exception.

### Conclusion

The judgment is affirmed.

IT IS SO ORDERED.

BACA, C.J., and BUSTAMANTE, J., concur.