2003-NMCA-056

66 P.3d 963

**Phillip ALLEN, a/k/a Phillip Lindberg, Plaintiff–Appellant,**

v.

**Rolando M. TONG, M.D., Defendant–Appellee.**

No. 22,325.

Court of Appeals of New Mexico.

Feb. 10, 2003.

Certiorari granted, No. 23,325, April 1, 2003.

M. Terrence Revo, Revo Law Firm, Albuquerque, NM, for Appellant.

Jennifer L. Stone, Miller, Stratvert & Torgerson, P.A., Albuquerque, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} Plaintiff Phillip Allen, also known as Phillip Lindberg, appeals from an adverse jury verdict on his medical malpractice claims against Defendant Dr. Rolando M. Tong. Plaintiff asserts: (1) the district court erred by refusing Plaintiff's tendered UJI 13–302B NMRA 2003 and by submitting a 13–302B instruction that was prejudicially confusing and not in conformity with UJI requirements, (2) opposing counsel made an improper and highly prejudicial comment during closing argument warranting reversal, and (3) the district court abused its discretion in denying Plaintiff's motion for a new trial which was based on these two asserted trial mishaps. We affirm.

## BACKGROUND

{2} On September 29, 1994, Bobbi Lindberg (Lindberg) took her then fifteen-year-old son, Phillip (Plaintiff) [1], to the emergency room at Rehobeth McKinley Hospital, because Plaintiff had a swollen, tender testicle, and he was in pain and vomiting. An emergency room physician, Dr. Beamsley, took Plaintiff's history, examined him, and took a Doppler reading of Plaintiff's pulse in both testicles. Dr. Beamsley called Defendant, who was the on-call surgeon, and described Plaintiff's condition. Dr. Beamsley told Defendant that he felt Plaintiff had testicular torsion and also stated that the condition was a surgical emergency.

{3} Defendant received this call from Dr. Beamsley at about 6:40 a.m. After the call, Defendant took a shower, shaved, got dressed, and then went to the hospital. Defendant thought he arrived at the hospital before 8 a.m. Plaintiff contends Defendant did not arrive until about 9:20 a.m. It would usually take Defendant anywhere from two to five minutes to drive from his home to the hospital. When Defendant arrived at the hospital, he reviewed Plaintiff's chart, spoke with Plaintiff, collected medical history from him, and proceeded with a physical examination and a Doppler examination to check for a pulse in each of Plaintiff's testicles. Through differential diagnosis, Defendant believed that the diagnosis was fifty-fifty between testicular torsion and epididymitis and he ordered a scan. Defendant agreed that a safe time to wait to operate and explore was about six hours from the onset of symptoms. The physician who administered the scan, Dr. Biunno, diagnosed epididymitis.

---

1. Plaintiff's mother, Bobbi Lindberg, sued individually and on behalf of her minor son, Phillip Lindberg. During the proceedings below the court dismissed Bobbi Lindberg in her capacity as representative for Phillip and ordered that Phillip's claim continue in his own name, Phillip Allen. The district court's judgment on the verdict was entered "against the Plaintiff" with no designation as to who the "Plaintiff" was. "Phillip Allen, also known as Phillip Lindberg" appealed from the judgment. However, the docketing statement was signed by counsel as attorney for "Plaintiffs/Appellants" and states that the notice of appeal was filed by "Plaintiffs." The brief in chief also states the notice of appeal was filed by "Plaintiffs," and is also signed by counsel as attorney for "Plaintiffs/Appellants."

{4} Dr. Tong did not see Plaintiff again on September 29 until 5 p.m. Plaintiff had been on pain medication during the day and was in a lot less pain when Defendant saw him at 5 p.m. Defendant performed another Doppler exam and could not hear a pulse in the left testicle. Lindberg testified that Defendant told her he was not going to take Plaintiff to surgery because Plaintiff had an infection, epididymitis. Defendant kept Plaintiff in the hospital and on intravenous antibiotics for the night.

{5} In the morning of September 30, Plaintiff had no pain and was hungry. His pain medication was discontinued and he ate some breakfast and most of his lunch. Defendant examined Plaintiff between 11 a.m. and noon that day. Plaintiff had no pain and wanted to go home. During his examination of Plaintiff, Defendant found that the left testicle was larger and he could not hear a pulse on the Doppler. Defendant attributed these circumstances to the infection. He discharged Plaintiff, having determined that Plaintiff was no longer in severe pain and was able to hold down a meal.

{6} Lindberg took Plaintiff back to the hospital the night of September 30 because Plaintiff's testicle had become greatly enlarged and discolored. The next morning, another surgeon, Dr. Voss, examined Plaintiff, conducted surgery, and found testicular torsion. Dr. Voss determined that it was too late to save the testicle and removed it. Plaintiff sued Defendant and others relating to the loss of his left testicle.

{7} Plaintiff presented expert medical testimony indicating that Defendant's actions fell below accepted medical practice standards because Defendant should have recognized the probability of testicular torsion and therefore should have conducted surgery in time to confirm the existence of the condition and likely save the testicle. Defendant presented expert medical testimony indicating that his conduct did not fall below those standards.

{8} In regard to instructing the jury, Plaintiff contends that many acts and omissions of Defendant constituted medical malpractice, including: the delay in arriving at the hospital; Defendant's failure to properly consider each of many circumstances, such as Plaintiff's age, his normal urinalysis, the onset of severe pain, nausea and vomiting, the testicle swollen to twice its size, the absence of pain when urinating; and Plaintiff's prior painful episodes; Defendant's failure to realize the critical significance of delay in regard to surgically acting to save a testicle when testicular torsion is indicated; Defendant's failure to examine Plaintiff while Plaintiff was standing, rather than lying down; Defendant's mistaken judgment that the Doppler was not operating properly; Defendant's failure to properly consider Doppler readings; Defendant's release of Plaintiff with a swollen testicle and the positive Doppler results for torsion; Defendant's having ordered unnecessary and improper tests, resulting in harmful delay; and Defendant's failure to perform the required simple surgical procedure of untwisting the testicle and tacking the torsion to the scrotum early on, based on the possibility of testicular torsion.

{9} The parties submitted requested jury instructions prior to trial, including their proposed 302B instructions (we refer to the tendered and given UJI 13–302B as the "302B instruction"). Plaintiff's tendered 302B instruction consisted of nineteen individual acts and omissions, each of which, Plaintiff contended, would constitute a breach of duty on Defendant's part. As his 302B instruction, Defendant tendered the form UJI 13–302B with no blanks filled in. The district court held a pretrial conference on the requested instructions, at which Plaintiff's nineteen-part 302B instruction was discussed; however, Plaintiff has not supplied a transcript of that conference, and we are unable to determine what was discussed. Following that conference, both parties submitted revised 302B instructions. Plaintiff reduced his 302B instruction to five individually listed acts and omissions each of which, Plaintiff contended, constituted a breach of duty on Defendant's part. Defendant submitted a two-contention instruction. At the direction of the district court, the parties then fashioned a 302B instruction that was given to the jury.

{10} The jury returned a defense verdict. Plaintiff filed a motion for a new trial based

on instruction error and on a statement defense counsel made in closing claimed by Plaintiff to be prejudicial. The motion was deemed denied due to the passage of thirty days. *See* Rule 1–059(D) NMRA 2003.

## DISCUSSION

### The Asserted Instruction Error

{11} Plaintiff asserts that the nineteen acts and omissions set out in his pretrial requested 302B instruction were all supported by evidence. This assertion also applies to his condensed five-part instruction later tendered. Plaintiff argues that each of the separately listed acts and omissions in his original instruction had a proper place in that instruction and that it was error to refuse it. Plaintiff further asserts that the court also erred in not giving his five-part 302B instruction as it was written. Plaintiff also argues that the instruction given by the district court exceeded the UJI 13–302B guideline and was prejudicially ambiguous, in that it was compound and confusing.

{12} We first set out the requested 302B instructions. We next discuss what is required under UJI 13–302B. Following that, we set out what occurred in the conference settling the revised 302B instruction. We conclude that the court did not err in requiring refinement of Plaintiff's tendered instructions, and that Plaintiff failed to preserve error as to the instruction given to the jury.

### The Requested 302B Instructions

{13} Plaintiff's original nineteen-part 302B instruction read:

To establish the claim of negligence on the part of defendant, the plaintiff has the burden of proving at least one of the following contentions:

1. Defendant failed to properly consider [Plaintiff's] age, normal urinalysis, sudden onset of severe pain, nausea and vomiting on the way to and at the E.R., the swelling of the left testicle to twice its normal size, and the absence of pain when urinating in ruling out testicular torsion as being the cause of [Plaintiff's] condition when admitted to the hospital.

2. Defendant failed to go [to] the hospital on September 29, 1994, to treat [Plaintiff] within a reasonable time after being notified that [Plaintiff] had been diagnosed with testicular torsion in his left testicle.

3. Defendant ignored [Plaintiff's] history that a few weeks before he had developed a sudden painful testicle that went away quickly.

4. Defendant did not properly consider the emergency room doctor's finding of testicular torsion on admission based on no pulse to the left testicle shown by [D]oppler examination.

5. Defendant did not properly consider his own [D]oppler findings of no pulse on the left testicle.

6. Defendant wasted valuable time by ordering a scan, thereby reducing the chance of saving [Plaintiff's] testicle.

7. Defendant failed to resolve the inconsistency that he thought existed between the nuclear scan as against the two [D]opplers.

8. Defendant failed to resolve the perceived inconsistency between the scan showing epididymitis and the clinical indications of testicular torsion.

9. Defendant diagnosed epididymtis [sic] based upon the use of a nuclear scan not designed for this purpose.

10. Defendant failed to read the actual report of the radiologist or to consult with her to resolve the apparent inconsistencies between the scan and his clinical findings and history.

11. Defendant failed to perform surgery on [Plaintiff] to verify his suspicion that [Plaintiff] had testicular torsion.

12. Defendant examined [Plaintiff] laying down instead of standing, causing him to miss important information about the position of the testicles within the scrotum.

13. Defendant discharged [Plaintiff] on September 30, 1994, with his left testicle swollen larger than on admission in the face of having conducted two more [D]oppler examinations which, like the two on the day before showed no pulse in the left testicle, thereby further reducing the chances of saving the testicle.

14. Defendant failed to monitor [Plaintiff's] left testicle after the scan results were reported to confirm or dispute the erroneous scan diagnosis of epididymitis.

15. Defendant, after the nuclear scan was performed, ignored two further [D]oppler examinations indicating no pulse to the left testicle and ignored other classical indications of a torsed testicle, leading directly to the loss of [Plaintiff's] left testicle.

16. Defendant did not attempt at anytime to manually detorse [Plaintiff's] left testicle.

17. From the time of his admission on September 29, 1994 at 6:30 a.m. until [Plaintiff] was discharged on September 30, 1994 in the early afternoon, Defendant failed to try to consult with another general surgeon available in the call-up area or with a urologist to resolve what Defendant perceived to be inconsistent or equivocal test results and clinical findings, some of which indicated surgical emergency.

18. Defendant failed to take into account the effect that the pain medication administered to [Plaintiff] would have on his clinical findings.

19. Defendant failed to recognize that the marked swelling in the left testicle reduced the pulse to the right testicle on [D]oppler.

The plaintiff also contends and has the burden of proving, that such negligence was a proximate cause of the injuries and damages.

Plaintiff's revised five-part 302B instruction read:

To establish the claim of negligence on the part of defendant, the plaintiff has the burden of proving at least one of the following contentions:

1. Defendant failed to properly consider [Plaintiff's] symptoms, history, laboratory results, and Doppler and nuclear scan results in diagnosing testicular torsion as against epididymitis;

2. Defendant took too long to get to the hospital after being notified of a surgical emergency, thereby reducing the chances of saving [Plaintiff's] testicle;

3. Defendant failed to perform surgery on [Plaintiff] to diagnose testicular torsion as against epididymitis;

4. Defendant examined [Plaintiff] laying down instead of standing, causing him to miss important information about the position of the testicles within the scrotum;

5. Defendant sent [Plaintiff] home from the hospital with testicular torsion which he knew or should have known existed, contributing to the loss of the testicle;

The plaintiff also contends and has the burden of proving, that such negligence was a proximate cause of the injuries.

Defendant's two-part 302B instruction read:

To establish the claim of negligence on the part of Defendant, the Plaintiff has the burden of proving at least one of the following contentions:

1. [Defendant] failed to diagnose torsion.

2. [Defendant] failed to operate on Plaintiff in a timely manner.

The Plaintiff also contends and has the burden of proving that such medical negligence was a proximate cause of the injuries and damages.

The court's 302B instruction given to the jury read:

To establish the claim of negligence on the part of defendant, the plaintiff has the burden of proving at least one of the following contentions:

1. Defendant failed to properly consider [Plaintiff's] symptoms, history, laboratory results, and Doppler and nuclear scan results and examined him laying down instead of standing up in diagnosing testicular torsion as against epididymitis; or

2. Defendant failed to operate on [Plaintiff] in a timely manner and sent him home from the hospital with testicular torsion which he knew or should have known existed.

The plaintiff also contends and has the burden of proving, that such negligence was a proximate cause of the injuries.

**UJI 13–302B and Its Use**

{14} UJI 13–302A NMRA 2003 is titled "Statement of theory[ies] for recovery," and its purpose is "to introduce by name the theory or theories of recovery relied upon by plaintiff." The theory for recovery of "negligence" is given in an example. *Id.* UJI 13–302A is to be combined with UJI 13–302B, to read:

> To establish the claim of *(theory of recovery by name, e.g., negligence)* on the part of [Defendant], [Plaintiff has] the burden of proving [at least one of] the following contention(s):
>
> (NOTE: List by number each claimed act, omission, or condition, etc., referenced to specific defendant(s), which is supported by substantial evidence.)
>
> [Plaintiff] also contend(s), and [has] the burden of proving, that such *(theory of recovery by name)* was a proximate cause of the [injuries and] damages.

{15} The UJI 13–302B Directions for Use state that "each numbered contention must contain a statement of facts which, *standing alone, establishes a breach of duty.*" (Emphasis added.) In addition, the Directions for Use state:

> Because each contention must state facts which show a breach of duty, it is not sufficient to state, e.g., "Defendant was driving 30 miles per hour" or "Defendant struck plaintiff's car". Rather, the contention should state that "Defendant was driving 30 miles per hour which was an unsafe speed under the circumstances" or "Defendant struck plaintiff's car because he failed to keep a proper lookout".

UJI 13–302B (Directions for Use). Sample instructions give plaintiffs examples of how to list individual acts/omissions. *See, e.g.,* UJI 13–302 series, example A; UJI App. 1, ch. 11 NMRA 2003.

{16} UJI 13–302B thrusts upon the district court the obligation to wade through a party's tendered factual contentions and to determine if those contentions properly fit within the purpose and wording of UJI 13–302B and its directions for use. The district court is required to assure that each separately numbered contention contains "a

statement of facts which, standing alone, establishe[d] a breach of duty."

**Settlement of the 302B Instruction**

{17} The district court and counsel discussed the 302B instruction in a conference that was held after the conclusion of the evidence and after the parties rested their cases. The initial discussion was in reference to Plaintiff's earlier tendered nineteen-part instruction. The 302B instruction was not "decided on," and the court stated, "I've got it crossed out." Defendant then tendered a 302B instruction. Plaintiff also tendered a 302B instruction with "a new set [of instructions] that I made that's complete with a praecipe." Referring to his 302B instruction, Plaintiff's counsel continued: "I tried to track what we agreed upon and all of that. . . . I reduced it down to five things instead of 18 [sic–19]."

{18} Defendant then spelled out his objections to Plaintiff's revised, five-part instruction, stating, among other things, that the factual statements in paragraph 1 were merely the factual bases for the factual contention in paragraph 3, and that the former was really incorporated in the latter. In addition, Defendant argued that paragraphs 2, 4, and 5 were improper because of the lack of expert testimony of a causal link between those facts and any resulting harm to Plaintiff. Defendant also stated that there was no expert testimony that the contention in paragraph 5 constituted malpractice. Defendant argued in support of his own tendered 302B instruction, stating that Plaintiff's evidence supported the two contentions Defendant set out, which were (1) failure to diagnose torsion, and (2) failure to operate in a timely manner.

{19} Plaintiff's counsel stated, "I have summarized in brief form the five paragraphs[ ] [that are] our specific factual basis for the claim[s] which the rules specifically allow us to do." Plaintiff's counsel and the court then discussed some of Plaintiff's contentions. The court said:

> Let me ask you this: I agree that a majority of these things are probably supportable by the evidence. My concern is some of these really go toward damages,

the egregiousness of it. I'm worried that somebody standing on their own is not going to be upheld by a review in court. I don't think they're going to utilize this as being able to support a medical malpractice, except for 3. You know, I'm just real worried about that. Whereas, the instruction that has been tendered by the Defendant, to me it is more comprehensive. I don't know if you need to get into all of the details. Like I said, I think they go to damages. Convince me otherwise.

After further discussion about the contentions, the court refused paragraph 2 of Plaintiff's five-part instruction because of lack of expert testimony. The court and Plaintiff's counsel then discussed the possibility of moving language and combining contentions. In the midst of this discussion, after Plaintiff's counsel appears to have conceded that one of the contentions was "in a way subsumed" within another, Plaintiff's counsel stated, "I'm not withdrawing our objection simply because I think we're entitled to list our specific factual contentions." The appellate record does not indicate which objection was referenced. Also during this discussion, the court stated:

Again, I'm still very concerned that when we're in court they're going to look at this, and it's just one of these, because that's what the instruction says, to establish a claim of negligence on the part of the Defendant, the Plaintiff has the burden of proving at least one. I'm not really sure that any one of these can stand on their own.

Following which this exchange occurred:

[PLAINTIFF'S COUNSEL]: Okay. Let me make sure that I understand, Your Honor, what you have told me I need to do. I take No. 4 and combine it with No. 1.

THE COURT: Yes.

[DEFENDANT'S COUNSEL]: Just throw in that—the laying down portion. And then No. 2 is out.

THE COURT: Two is out. That definitely is out.

[PLAINTIFF'S COUNSEL]: And No. 3 is okay.

THE COURT: I think you can mesh five and three together, actually, because that's where it starts, Defendant failed to perform surgery in a timely fashion, and he sent him home. I would be happy with that. Then I think you have encompassed the either/or of the preliminary statement, [t]o establish a claim of negligence, has the burden of proving at least one of the following. I think any one, either one of those would stand on its own then.

[PLAINTIFF'S COUNSEL]: So by saying Defendant—on No. 5, Defendant failed to operate on [Plaintiff] in a timely manner, and sent him home from the hospital, et cetera, and leave out No. 3?

THE COURT: Yes, that would be right.

[DEFENDANT'S COUNSEL]: And sent him home from the hospital, period?

THE COURT: Right.

[PLAINTIFF'S COUNSEL]: I think we need to put with testicular torsion which he knew or should have known existed, contributing to the loss of the testicle.

THE COURT: I said period. Okay, I'm going to let you put it in.

[DEFENDANT'S COUNSEL]: What all is going to go in there?

THE COURT: [Defendant] failed to operate on [Plaintiff] in a timely manner, and thereafter sent [him] home from the hospital with testicular torsion which he knew or should have known existed, period.

Then both of you agree on that very last sentence, I'll put "agreed." Next we have—

[DEFENDANT'S COUNSEL]: Judge, we did tender our 302(B) and you should have that for the record.

THE COURT: I have it right here. Actually, I have them all here to go into the record.

The entire discussion of the 302B instruction then ended as follows:

[PLAINTIFF'S COUNSEL]: So what we have left, Your Honor, let me make sure before I start drafting things here: No. 1 and 4 are going to be combined, and No. 5 is going to be given as the second factual contention with the changes that you've already indicated?

THE COURT: Yes, with respect to No. 5. Three and five are kind of together.

[PLAINTIFF'S COUNSEL]: Yes.

THE COURT: Okay.

{20} The record reflects a definite "give and take" to arrive at a 302B instruction. What we glean from this conference settling the 302B instruction is that the court wanted paragraph 2 of the five-part instruction eliminated for failure of evidence, and wanted the remaining four paragraphs combined, resulting in a two-part instruction. The court, therefore, moved counsel toward and ultimately gave an instruction substantially containing the specific factual contentions in Plaintiff's five-part instruction except those relating to how long it took Defendant to get to the hospital. The court apparently thought that the four specific factual contentions, those in paragraphs 1, 3, 4, and 5, could not separately stand alone, but that, in combinations, paragraph 1 with 4, and paragraph 3 with 5, they could stand alone as two separate factual contentions. It is also apparent that the court was attempting to break the basic factual contentions of negligence into failures to (1) diagnose a probability of testicular torsion, and (2) timely act to confirm the existence of testicular torsion and to correct the condition. As the 302B instruction was ultimately customized, with its conjunctions, Plaintiff was required to prove one or the other of two sets of facts, instead of having the benefit of being required to prove only one of nineteen, or perhaps five, separate factual contentions.

{21} Plaintiff complains that the given 302B instruction prejudicially lessened his chances of proving a breach of duty by Defendant. Plaintiff insists he was entitled to submit his nineteen-part instruction and to have the jury consider each of the nineteen parts as an independent basis on which to find a breach of duty. He also asserts that it was error for the court to require him to prove combinations of the five factual contentions in his revised 302B instruction in the combinations that appeared in the 302B instruction given by the court.

**Preservation of Error**

{22} Defendant contends that Plaintiff failed to preserve the error he asserts. Defendant argues that Plaintiff waived any objection to the court's refusal to give the nineteen-part instruction because Plaintiff has not produced a record of the discussions regarding that instruction, and also because Defendant submitted a revised, two-part instruction as a part of a new set of jury instructions in place of Plaintiff's original instruction. Defendant further argues that Plaintiff agreed to change the five-part instruction by combining the factual contentions into two basic contentions. Defendant also argues that, while Plaintiff did state he was not withdrawing his objection that he was entitled to list his specific factual contentions, Plaintiff failed to identify any specific objection to the instruction ultimately given to the jury.

{23} The basic tension in building an appropriate UJI 13–302B instruction has always been whether, and if so, to what extent, specific detail is to be stated, or whether broader, more ultimate, factual contentions should be listed. UJI 13–302B purposely leaves room for discussion about what acts and omissions should be listed, and what wording will clearly convey to a jury a plaintiff's factual contentions showing a breach of duty. "The goal is clarity." App. 1, ch. 11 (instructions).

{24} It appears that both the court and Plaintiff were appropriately headed in the direction of moving away from the detailed facts in the nineteen-part instruction to broader, more ultimate factual contentions as contained in the five-part instruction and then, finally, to the instruction given to the jury. For example, paragraphs 1 and 3 of Plaintiff's nineteen-part instruction listed Defendant's failure "to properly consider [Plaintiff's] age, normal urinalysis, sudden onset of severe pain, nausea and vomiting on the way to and at the E.R., the swelling of the left testicle to twice its normal size," and stated that "Defendant ignored [Plaintiff's] history that a few weeks before he had developed a sudden painful testicle that went away quickly." Paragraph 1 of Plaintiff's revised five-part instruction omitted these specific facts.

Instead, it attempted to list broader facts, such as, Defendant failed "to properly consider [Plaintiff's] symptoms, history, [and] laboratory results." For another example, paragraphs 6, 13, and 16, among several others, of Plaintiff's nineteen-part instruction detailed specific facts that Plaintiff contends led to a reduced chance of saving the testicle. Paragraphs 1, 2, and 5 of Plaintiff's five-part instruction attempt consolidation of those details into three broader contentions showing a reduction in chance of successful treatment. Finally, detail as to what Defendant should have done or failed to do to assure a proper diagnosis, and detail relating to Defendant's failure to timely operate, were combined to form the two-part instruction given to the jury.

{25} UJI 13–302B provides guidance on what is to be stated as a factual contention which, standing alone, could prove breach of duty. To be listed, the acts and omissions must pass certain tests. Substantial evidence must exist to support the contention. UJI 13–302B. An asserted act or omission may fail due to the lack of medical testimony required to prove that it fell below the standard of care in the medical community. *See Pharmaseal Labs., Inc. v. Goffe,* 90 N.M. 753, 758, 568 P.2d 589, 594 (1977) ("Negligence of a doctor in a procedure which is peculiarly within the knowledge of doctors, and in which a layman would be presumed to be uninformed, would demand medical testimony as to the standard of care."). Further, the contention is not viable if required evidence of causation linking the act or omission to the injury is missing. *See Cervantes v. Forbis,* 73 N.M. 445, 448, 389 P.2d 210, 213 (1964) ("[E]xpert testimony is generally required to establish causal connection."). A tendered 302B instruction that passes these tests is to be worded in a way that fairly and clearly describes the act or omission that, if proven, establishes a breach of duty. *See Mireles v. Broderick,* 117 N.M. 445, 451, 872 P.2d 863, 869 (1994) ("When draft language gives rise to concern, the trial court is nonetheless under a duty to instruct the jury succinctly and accurately on the issue of law presented.").

{26} Plaintiff stated he was not withdrawing an earlier objection apparently related to his right to list specific factual contentions. This appears to refer to some objection made earlier in regard to the court's concern about Plaintiff's nineteen-part instruction. However, the district court did not err by requiring Plaintiff to substantially trim and consolidate his nineteen proffered contentions. The instruction contained factual statements that were too detailed, were repetitive, and that, standing alone, would not establish a breach of a duty. Many of the statements contained facts to be argued to the jury, not to be placed in a 302B instruction. Thus, the court did not err in requiring Plaintiff to submit another instruction. *See id.* at 452, 872 P.2d at 870 ("The trial court may submit the instruction as tendered or change the instruction, with or without consultation with counsel, to suit his or her particular proclivity and style. Only legal or factual insufficiency will justify rejection.").

{27} Plaintiff's evidence of breach of duty was: Defendant's delay in coming to the hospital; the existence of facts tending to indicate testicular torsion; Defendant's alleged failures to properly evaluate symptoms and tests, to read reports, and to conduct a proper physical examination; and Defendant's having caused or permitted critical time to pass due to his own faulty clinical judgment and diagnosis, unnecessary tests; and his having sent Plaintiff home. Plaintiff attempted to condense these evidentiary facts in his five-part instruction.

{28} Plaintiff's five-part instruction came much closer to the letter and spirit of UJI 13–302B. However, that instruction still did not clearly and succinctly set out the factual contentions underlying Plaintiff's negligence claim. The crux of Plaintiff's claim of negligence is contained in paragraph 2 of the given 302B instruction, namely, that "Defendant failed to operate on [Plaintiff] in a timely manner and sent him home from the hospital with testicular torsion which he knew or should have known existed." All of the more specific, evidentiary detail constituted support for the factual statements in this contention. The experts' testimony and the facts as

to Defendant's specific actions and failures to act could potentially show that Defendant should have diagnosed the probability of torsion, should have known to conduct timely exploratory surgery, and should not have sent Plaintiff home without conducting that surgery.

{29} The court, therefore, did not err in rejecting Plaintiff's five-part instruction as written and by working with Plaintiff on a restated 302B instruction. The five-part instruction needed refinement before its presentation to the jury. The court obviously wanted the instruction to more clearly and succinctly set out Plaintiff's factual contentions establishing negligence. Yet, it is equally obvious that the court also wanted to accommodate Plaintiff by incorporating in the instruction wording used in his five-part instruction.

{30} It appears from the last of the discussion between the court and Plaintiff's counsel that Plaintiff's counsel was in charge of drafting appropriate language. Where the court and Plaintiff went wrong was that the instruction given to the jury was defective. The two contentions listed in the given 302B instruction need not, and should not, have been separated by the word "or." *See* UJI 13–302, Examples A and B (listing factual contentions without "or"). Further, because of the use of the conjunction "and" in each of the two contentions in the given instruction, the jury was instructed that it had to find the existence of each fact stated in order to conclude Defendant was negligent. Thus, in the first paragraph, to prove that Defendant failed to diagnose testicular torsion as opposed to epididymitis, it appears Plaintiff had to prove not only that Defendant failed to properly consider Plaintiff's symptoms, but also failed to consider history, laboratory and other test results, and to conduct a proper physical examination. In addition, the parties did not follow the example in Appendix 1 to Chapter 11 which sets out UJI 13–302B with a general contention of failure to use the skill and care required in a particular area of practice, followed by a brief description of the failure.

{31} During the conference settling the 302B instruction, Plaintiff stated he was not withdrawing an earlier objection that is not contained in the record on appeal and that was apparently related to his right to list specific factual contentions. However, it appears from the record of the conference that although he preferred listing several factual contentions, Plaintiff felt he could accept the instruction as given by the court. Not only does it appear from the record that Plaintiff drafted the 302B instruction given to the jury, Plaintiff has not provided any record showing, nor does he assert on appeal, that he objected to any particular aspect of that instruction. He did not attack the instruction as inaccurate, deficient, or confusing. He did not attempt to explain to the court why it was inaccurate or deficient or why his five-part instruction was more appropriate. He nowhere suggests that he was not afforded a reasonable opportunity to object.

{32} Rule 1–051(I) NMRA 2003 reads:

> For the preservation of any error in the charge, objection must be made to any instruction given, whether in UJI Civil or not; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object or tender instructions.

The principal purposes behind the rule requiring preservation are to ensure that the district court and opposing counsel are alerted to the error in order to provide the court an opportunity to correct a potential mistake and to provide opposing counsel an opportunity to respond to any objection. *McLelland v. United Wis. Life Ins. Co.*, 1999–NMCA–055, ¶ 24, 127 N.M. 303, 980 P.2d 86; *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App.1995). Rule 12–216(A) NMRA 2003 governing our scope of review requires, for preservation of a question for review, that "a ruling or decision by the district court was fairly invoked."

{33} Plaintiff objected to neither the wording, nor the structure of the given instruction, and never suggested better or different wording or structure. He thereby failed to preserve error for review. *See Sonntag v. Shaw*, 2001–NMSC–015, ¶ 17, 130

N.M. 238, 22 P.3d 1188 ("If a party wishes to preserve for appellate review the trial court's decision to provide the jury with one instruction rather than another, that party must draw the court's attention to a specific flaw in the given instruction."); *Lewis v. Rodriguez,* 107 N.M. 430, 435, 759 P.2d 1012, 1017 (Ct.App.1988) (holding error not preserved where party failed to alert court to error in given instruction that was constructed from both parties' tendered instructions); *Echols v. N.C. Ribble Co.,* 85 N.M. 240, 246, 511 P.2d 566, 572 (Ct.App.1973) ("Objections must be explicit. Objections in general terms are not sufficient. The trial court must be advised of the specific error so [it] may have an opportunity to correct it.").

{34} In sum, we see no basis on which to hold that the district court erred under the circumstances. Plaintiff's tendered 302B instructions were unacceptable as written and Plaintiff's counsel and the court settled the 302B instruction through discussion in an uncoercive, bona fide give-and-take process. During this discussion, Plaintiff had the opportunity to present wording and structure satisfactory to Plaintiff and to object to the wording and structure of the instruction given to the jury. We do not believe the circumstances are so exceptional as to require reversal based on fundamental error. *See Chavez v. Bd. of County Comm'rs,* 2001–NMCA–065, ¶ 40, 130 N.M. 753, 31 P.3d 1027; *Gracia,* 120 N.M. at 197, 900 P.2d at 357.

### Counsel's Closing Argument

{35} The case below was tried on a bifurcated basis—first liability, then damages. This appeal is from the liability verdict. The issue of damages was never reached. During his closing argument, Defendant's counsel stated that if the jury found Defendant was not negligent, then "that will be the end of this trial and your job will be over, and you will get back to your jobs and your families."

{36} Plaintiff accuses Defendant's counsel of "attempt[ing] to cultivate an improper mind set in the jurors," by "reminding them that a 'no' verdict will end this whole matter." Plaintiff asserts that the one hour and twenty minute jury deliberation shows the

effect and prejudice of this statement. Further, Plaintiff states that Defendant's counsel breached an ethical duty by giving the jury a "fast track" direction that must come from the court, not from counsel, thereby misstating the law as to the duty of jurors.

{37} Plaintiff made no objection to the statement. Absent an objection, we will review the propriety of the statement only in "exceptional cases where the interest of substantial justice is at stake." *Lopez v. Southwest Cmty. Health Servs.,* 114 N.M. 2, 10, 833 P.2d 1183, 1191 (Ct.App.1992) (internal quotation marks and citation omitted). Plaintiff asserts that interest is at stake and that the doctrine of fundamental error should be applied because the argument was "so flagrant and glaring in fault and wrongdoing as to leave the bounds of ethical conduct." *Grammer v. Kohlhaas Tank & Equip. Co.,* 93 N.M. 685, 693, 604 P.2d 823, 831 (Ct.App.1979). We disagree.

{38} In his closing argument, Defendant's counsel discussed the evidence and asked the jury to consider whether Defendant's thinking was reasonable and whether his actions were in good faith under the circumstances presented to him. Counsel then suggested to the jury that the evidence established that the answer was "yes." He then discussed some of the instructions, including the special verdict form, noting for the jury in particular the first question on the special verdict form, which was whether Defendant was medically negligent. He asked the jury to answer that question "no." It was at that point that Defendant's counsel indicated that with a "no" answer the trial would be over and everyone could get back to their work and families.

{39} In the context of his argument, we cannot say that Defendant's counsel's statement was a flagrant or glaring wrongdoing that requires us to invoke fundamental error. We therefore reject Plaintiff's request that we reverse based on this statement during closing argument.

### Denial of Motion for New Trial

{40} Plaintiff asserts the district court abused its discretion in denying his

motion for a new trial. We review orders that deny a motion for a new trial under a deferential, abuse of discretion standard. *Rhein v. ADT Auto., Inc.*, 1996–NMSC–066, ¶ 18, 122 N.M. 646, 930 P.2d 783. Based on our holdings on the instruction error and closing argument issues and our analyses underlying those holdings, we see no basis on which to view the district court's order denying Plaintiff's motion for a new trial to be an abuse of discretion.

## CONCLUSION

{41} We affirm.

{42} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.